# THE

# New York Supplement.

## VOLUME VI.

---

### FIFTH NAT. BANK OF PROVIDENCE v. NAVASSA PHOSPHATE CO.

*(Superior Court of New York City, General Term.* June 28, 1889.)

PRINCIPAL AND AGENT—PROOF OF AGENCY.

In an action to enforce defendant company's liability on.a note indorsed in the name of the company by its president, there was no proof that the president had direct authority to indorse the note in suit, and the only evidence from which authority could be inferred consisted of numerous former indorsements of the company's name by the president, in which cases the paper had been transferred, and the apparent obligation of the company as indorser satisfied, but plaintiff knew nothing of these indorsements at the time it discounted the note. If the payments in such cases were in fact made from the funds of the company, it did not appear that there were any book-entries disclosing them, but rather that the president conducted all the transactions personally. *Held,* that the evidence was insufficient to establish his authority.

Appeal from jury term.

Plaintiff appeals from a judgment dismissing its complaint at the close of the evidence. The facts appear in the opinion.

Argued before SEDGWICK, C. J., and FREEDMAN, J.

*Ab1am Kling,* for appellant. *Alexander & Green,* (*Eugene L. Richards,* of counsel,) for respondent.

SEDGWICK, C. J. The action was against the defendant as indorser of two promissory notes. On their face the notes were payable to the order of Navassa Phosphate Company. The indorsement was, "Navassa Phosphate Company, W. E. Lawton, Prest.," and then the further indorsement, "Lawton Brothers." W. E. Lawton represented Lawton Bros., and there was no partner. The note was delivered to the plaintiff by W. E. Lawton, was discounted for him, and the proceeds remitted to him. The question on the trial was whether the indorsement "Navassa Phosphate Company" was the indorsement of the defendant. *Prima facie,* the indorsement did not bind the company, although W. E. Lawton was president of it; for that fact did not tend to prove that he was authorized to sign the company's name as indorser. The plaintiff was therefore bound to give some competent evidence that the president was in fact authorized to indorse, or that the company held him out as authorized. No testimony was given that authority had been given specifically. The only other evidence on this point consisted of proof of many former indorsements of the company's name by Lawton, in which cases the paper had been transferred, and the seeming obligation of the company as indorser

had been satisfied. The plaintiff, when it discounted the notes in action, did not know of these former indorsements, excepting in a few instances, in which they had discounted notes. These were but a few, and so few that the jury could not find that they of themselves established the liability, and as to them there was no proof of ratification. Therefore the plaintiff could not prevail, on the ground of estoppel, as if the defendant had given apparent authority to or recognized authority in Lawton to indorse for them, on which the plaintiff had acted. The plaintiff must then resort to the inferences to be drawn from cases of former indorsements, not known to it at the time. Necessarily the inferences must be drawn from the actual facts, and not a part of the facts. The former indorsements must be examined in the light of the circumstances that would give them the real significance that should be duly attached to them. The plaintiff gave many instances where notes payable to the defendant had been indorsed by Lawton as president, and then discounted at his request by the bank where the defendant kept its account, and the proceeds of the discount were deposited to the credit of the account. In these instances it would appear that an indorsement was a formal matter, so far as authority was concerned; for the receipt of the proceeds specifically ratified, and would under all circumstances ratify, the indorsement, whatever form it had. The plaintiff would not be entitled from such cases to infer that the defendant had authorized its president to make it liable for indorsements to others, as transferring its cause of action on the paper to others. There were proved, also, many other cases of notes, which had been made by third parties to the order of the company, and indorsed by Lawton in the name of the company as its president or treasurer, and then Lawton procured the discounting of them, and they had been afterwards paid. This testimony was not effective for the plaintiff, because the transactions were all conducted by Lawton personally. There was no proof that in his fraudulent conduct he did anything which gave notice to the company, excepting himself, of what he personally had done, and which they must be held to know before they can be bound as if by a ratification. If in fact the payments were made from the funds of the company, there was no proof that there were on the books of the company any entries that disclosed that such payments had been made upon a pretended liability of the company upon an indorsement made by Lawton for the company, as president. These transactions, if they had been known by the plaintiff, as they were in actuality, would not have evinced any action of the company, in view of an indorsement by Lawton as president. The evidence as to the former indorsements was at a first and insufficient glance plausible from their number and their amount. A scrutiny shows that it was vague, and that it did not import considerations valuable to the plaintiff. Several witnesses relied on by the plaintiff spoke of masses of notes, and gave general statements as to them. A part of those statements would be decisive for the defendant, and there was no certainty that they were not to be applied to all of the notes referred to in mass. I am of opinion that the earlier transactions did not show that the defendant had recognized that Lawton was authorized to sign the corporate name in indorsement.

The learned counsel for plaintiff argued that testimony was stricken out which would have shown that the defendant had recognized its liability upon indorsements of this kind. The testimony on this point was extremely vague and insufficient. It referred to a mortgage, which it was assumed had been received by the defendant as security against losses by the defendant from such indorsements. I cannot find that such was the purpose of the security. There was nothing testified which would be inconsistent with the defendant's denying liability on such indorsements, and properly refraining from enforcing the mortgage, as to every case in which it appeared that though indorsement was unauthorized, yet there was no loss, excepting as to the costs and expenses of a defense. I think the judgment should be affirmed, with costs.